IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI,
SOUTHERN DIVISION

AXIS SURPLUS
INSURANCE COMPANY,

    Plaintiff,                                 CASE NO.:   1:23cv58 HSO-BWR

v.

DIAMONDHEAD COMMERCIAL
DEVELOPMENT, LLC,

    Defendant.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, AXIS SURPLUS INSURANCE COMPANY ("AXIS"), by and through undersigned counsel, hereby files its Complaint for Declaratory Judgment against the Defendant, DIAMONDHEAD COMMERCIAL DEVELOPMENT, LLC ("Diamondhead"), alleging as follows:

1. This is an action for declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, *et seq.*

2. AXIS seeks a determination that it has no duty to indemnify any losses to Diamondhead claimed pursuant to a Commercial General Liability Policy identified by Policy Number ESC75083, with a policy period of August 1, 2020 to August 1, 2021 (the "Policy" and "Policy Period").[1]

---

[1] A certified copy of the Policy is attached as, **Exhibit A.**

3. Further, AXIS seeks a determination that the Policy is null and void due to Diamondhead's material misrepresentations made during the application process for the Policy.

## PARTIES, JURISDICTION, AND VENUE

4. AXIS is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Alpharetta, Georgia. At all times material hereto, AXIS has been authorized to conduct business in the State of Mississippi.

5. Diamondhead is a limited liability company organized and existing under the laws of the State of Mississippi, with its principal place of business in Diamondhead, Mississippi.

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between AXIS and Diamondhead and the matter in controversy exceeds $75,000.00, exclusive of interest, attorney's fees and costs.

## CLAIM OVERVIEW

7. The Policy insures certain improved property at a shopping center owned by Diamondhead against specified losses as set forth in the Policy, and pursuant to the terms therein (the "Property"). See, Exhibit A at p. 19-23 (Declarations and Supplemental Declaration Pages of the Policy)

8. This action sprang from a claim under the Policy submitted by Diamondhead following a weather event identified as Hurricane Zeta, which reportedly impacted the Property on or about October 28, 2020 ("Zeta Claim").

9. In the course of investigating the Zeta Claim, AXIS received information indicating payments were issued to Diamondhead by Lloyd's of London for physical damage to the Property related to a June 7, 2020 date of loss, which is when Tropical Storm Cristobal impacted the area surrounding the Property ("Cristobal Claim").

10. An Appraisal Award Form signed by the Appraiser for Diamondhead on June 21, 2021 – less than four months before the subject Policy was procured – indicated the cash value of damages to the Property related to the Cristobal Claim totaled $647,600.85.

11. Diamondhead failed to include any information concerning any damage sustained to the Property prior to the Policy Period when applying for the Policy.

12. In the course of investigation the Zeta Claim, AXIS discovered that Scott M. Favre Public Adjuster, LLC ("Favre Public Adjuster") prepared for Diamondhead an estimate of losses to the Property for the Cristobal Claim, as well as the Zeta Claim.

13. On or about June 23, 2020, Favre Public Adjuster estimated the amount of damages to the Property related to the Cristobal Claim as $405,430.92.

14. On or about December 9, 2020, Favre Public Adjuster estimated the amount of damages to the Property related to the Zeta Claim as $621,430.56.

15. Given the apparent comprehensive damage to the Property sustained prior to the Policy Period, AXIS requested information to aid in its investigation of the Zeta Claim.

16. On March 9, 2022, Jim Grotkowski, the sole Principal/Manager of Diamondhead, appeared for an examination under oath ("EUO") conducted in connection with AXIS' investigation of the Zeta Claim.[2]

17. During the EUO, Mr. Grotkowski repeatedly averred that Favre Public Adjuster was entrusted with handling both the Zeta and Cristobal Claims for him and deferred to Mr. Favre on all issues related to the damages sustained by the Property, the nature and scope of any repairs made to the Property, and the extent of any repairs that are reportedly still needed at the Property.

18. AXIS, through the undersigned, subsequently requested that Mr. Favre provide an EUO to discuss issues central to the Zeta Claim, about which, per Diamondhead, only Favre Public Adjuster have knowledge.

19. AXIS' request for a EUO of Mr. Favre was refused.

## THE POLICY

20. The Policy provides coverage for the Property subject to its terms, conditions, exclusions and limitations.

21. The Policy includes an Endorsement identified as a Pre-Existing Damage Exclusion, which provides in pertinent part:

**Pre-Existing Damage Exclusion**
. . .

We will not pay for any loss or damage which:

a. Occurred prior to the inception of the policy regardless of whether such damages were apparent at the time of the inception of this policy; or

b. Occurs after the inception of the policy but arises out of workmanship, repairs or failure to report prior to the inception of this policy

---

[2] A copy of the transcript of the EUO is attached as **Exhibit B**.

4

22. Based on the foregoing endorsement, any damages caused by occurrences pre-existing the Policy Period are excluded and not covered by the Policy.

23. The Policy also includes a section titled "Duties in the Event of Loss or Damage", which sets forth certain responsibilities Diamondhead has, along with conditions that Diamondhead "must see [] are done in the event of loss or damage to [the] Property, including the duty to "cooperate with [AXIS] in the investigation or settlement of the claim." *See*, Exhibit A at § E.3.a (8).

24. Also included in the Policy's section addressing Diamondhead's duties in the event of loss or damage is a provision allowing for the taking of EUOs in connection with the investigation of a claim. *See,* Exhibit A at § E.3.b

## COUNT I
## CLAIM FOR DECLARATORY JUDGMENT
## (RESCISSION FOR MATERIAL MISREPRESENTATION)

25. AXIS reasserts and incorporates by reference Paragraphs 1 through 24 of this Complaint as if fully set forth herein.

26. Diamondhead's application for the Policy failed to disclose that it had submitted a prior claim for damages sustained to the Property as a result of a weather event identified as Tropical Storm Cristobal.

27. AXIS had the right to rely on the information supplied in Diamondhead's application for the Policy when determining whether to insure the Property.

28. Diamondhead's failure to disclose any information regarding the Prior Claim when applying for the Policy was a false and material misrepresentation, as

knowledge of the Cristobal Claim would have influenced a prudent insurer in determining whether to accept the risk.

29. AXIS relied on Diamondhead's inaccurate and incomplete application when making the decision to accept the risk of insuring the Property.

30. Had AXIS known of the Cristobal Claim, it would have either declined to accept the risk of insuring the Property, or would have offered Diamondhead an insurance contract with substantially different terms than the Policy that was issued.

**WHEREFORE**, AXIS Surplus Insurance Company respectfully requests entry of a declaratory judgment rescinding the Policy, finding the subject Policy to be null and void, and for all further relief that is just and proper.

### COUNT II
### CLAIM FOR DECLARATORY JUDGMENT
### (DUTY TO COOPERATE)

31. AXIS reasserts and incorporates by reference Paragraphs 1 through of 24 of this Complaint as if fully set forth herein.

32. AXIS, when attempting to obtain records and information in order to investigate the Zeta Claim -- and differentiate potential damages related to same versus those attributed to the Cristobal Claim -- AXIS was repeatedly directed by Diamondhead to public adjuster, Scott Farve.

33. However, AXIS was never afforded the opportunity to discuss the records in Mr. Farve's possession during an examination under oath.

34. Testimony provided during the EUO of Diamondhead's lone managing parter, Jim Grotkowski confirmed that Favre Public Adjuster was retained by Diamondhead to oversee all issues related to the Zeta Claim:

6

> Q. I want to go back to Exhibit 1, if we could please. I was asking you about this. And thank you for producing that document to me. I had a list of items that I asked or requested that you try to find if they were available and produce to me. Did you have a chance to look at that?
>
> A. I did, yeah. He sent it to me yesterday also. I guess that'd be a Farve question more than me. I turned this claim over to Favre.
>
> Q. And Scott Favre is the public adjuster who you retained for this claim, correct?
>
> A. Uh-huh, yes. Yes.

Exhibit B at 19:7-18.

    35.    It was also confirmed at the EUO that Favre Public Adjusting handled the Cristobal Claim.

> Q. And Cristobal would have been, I think, a June 2020 storm? Is that right?
>
> A. Yes
>
> Q. Okay. And Mr. Farve worked on that one as well?
>
> A. He did, yes.

Exhibit B at 20:3-8.

    36.    AXIS requested that Diamondhead provide documents that would assist in the investigation of the Zeta Claim; including documents related to prior losses caused by weather events predating the reported date of loss at issue, such as Tropical Storm Cristobal. During Diamondhead's EUO, it became apparent that Favre Public Adjuster was in possession of the majority of the relevant and responsive materials:

> Q. Did you reach out to Mr. Farve at all to ask him about the documents that had been requested?
>
> A. You sent it to me and to him, and my file is this one page (holding up Exhibit 2 [to the EUO]).

7

37. The one page comprising Diamondhead's entire file materials for the Zeta Claim, identified as Exhibit 2 to the EUO, included only copies of four separate checks issued by Diamondhead for "temporary repairs and roof damage." *See*, EUO at 14:6.

38. Diamondhead was unable to identify with any particularity the areas of the Property to which the payments referenced in the preceding paragraph were related; nor was Diamondhead able to provide any further records related to any repairs made:

> **Q. Okay. Other than the checks, what other records would you keep on repairs that are made to the building?**
>
> **A. Just the check.**
>
> **Q. Okay.**
>
> **A. We kind of try to keep it simple.**

Exhibit B at 17:7-17; *see also*, id at 17:1-6 (wherein Diamondhead could not provide any insight into whether the four checks that comprised the entirety of its file were for payments related to repair of areas of the Property that had remained fully unrepaired following Tropical Storm Cristobal).

39. As evidenced by its EUO testimony, Diamondhead's failure to cooperate hindered AXIS' investigative efforts by entrusting the entirety of Zeta Claim – including any actual knowledge regarding the condition of the Property – to Favre Public Adjuster:

> **Q. All right. So Mr. Favre, then, he would be the one who would have documented any damages that you believe are related to the storm?**
>
> **A. I believe he's dealing with it. He's my doctor on it.**

Exhibit B at 27:17-25.

. . .

> **Q. Sure. I understand. But that's what I'm asking about, is, you know, visible damages like that exist today. I mean, are there portions of the roof that are missing that are tarped right now?**
>
> **A. I haven't been on the roof in 15 years. You have to talk to Farve & Associates. I gave you the repairs, and they're temporary repairs.**

Id. at 30:7-14.

. . .

> **Q. As far as the actual damages out there, I'm assuming you're going to defer everything to Mr. Favre?**
>
> **A. Possibly, yes. That's who I hired.**
>
> **Q. Well, I need to know yes or no, because it's not possibly, we're going to need to talk about it more in depth today. But every time I've asked you the question so far, you've deferred to Mr. Favre?**
>
> **A. I hired Favre & Associates to handle the claims, yes.**

Id. at 31:6-16.

40. Diamondhead's failure to have Favre Public Adjuster appear for an examination under oath, combined with Diamondhead's inability and/or refusal to provide any meaningful information allowing AXIS to differentiate any potential losses related to the Zeta Claim from those related to the Cristobal Claim, constitutes a breach of Diamondhead's duty to cooperate, as set forth in the Policy, and has resulted in AXIS' inability to fully and fairly assess the subject claim.

41. An actual, justiciable, and present controversy exists between the parties as to whether Diamondhead is in breach of its duty to cooperate with AXIS in the

9

investigation of the Zeta Claim thereby relieving AXIS from any duty to indemnify Diamondhead for any alleged losses encompassed by the Zeta Claim.

**WHEREFORE**, AXIS Surplus Insurance Company respectfully requests that this Court determine and adjudicate the rights and liabilities of the parties with respect to the Policy; find and declare that AXIS has no duty to indemnify Diamondhead Commercial Development, LLC under the terms of the Policy for any alleged damages caused to its Property by Hurricane Zeta; and grant any other such relief deemed appropriate under the circumstances.

Dated this 2nd day of March, 2023.

BUTLER WEIHMULLER KATZ CRAIG LLP

MICHAEL A. MONTGOMERY, ESQ.
Mississippi Bar Number: 105643
mmontgomery@butler.legal
BARRY T. BURKETT, ESQ.
bburkett@butler.legal
Secondary:   tbailey@butler.legal
P.O. Box 850368
Mobile, AL  36685-0368
Telephone:   (251) 338-3801
Facsimile:   (251) 338-3805
Mail Center:  400 N. Ashley Drive, Suite 2300
              Tampa, Florida  33602
*Attorneys for AXIS*

.

## CERTIFICATE OF SERVICE

I hereby certify that on <u>March 2, 2023</u>, I electronically filed the foregoing with the Clerk of the Court using the ECF system.

_____
MICHAEL A MONTGOMERY, ESQ.