IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| AXIS SURPLUS INSURANCE COMPANY § § § § | | PLAINTIFF |
| v. § § | Civil No. 1:23-cv-00058-HSO-BWR | |
| DIAMONDHEAD COMMERCIAL DEVELOPMENT, LLC § § | | DEFENDANT |
| DIAMONDHEAD COMMERCIAL DEVELOPMENT, LLC § § § | | COUNTERCLAIMANT |
| v. § § § | | |
| AXIS SURPLUS INSURANCE COMPANY and AMWINS ACCESS INSURANCE SERVICES, LLC § § § § | | COUNTER DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING THIRD-PARTY DEFENDANT AMWINS ACCESS INSURANCE SERVICES, LLC'S RULE 12(B)(6) MOTION [20] TO DISMISS COUNTERCLAIMANT DIAMONDHEAD COMMERCIAL DEVELOPMENT, LLC'S THIRD-PARTY CLAIMS**

BEFORE THE COURT is Third-Party Defendant AmWINS Access Insurance Services, LLC's ("Amwins") Rule 12(b)(6) Motion [20] to Dismiss Third-Party Claims for failure to state a claim upon which relief can be granted, which seeks dismissal of Counterclaimant/Third-Party Plaintiff Diamondhead Commercial Development, LLC's third-party claims against Amwins. After due consideration of the Motion [20], the pleadings, the parties' arguments, and relevant legal authority, the Court finds that the Motion [20] should be granted.

1

## I. BACKGROUND

A.  Factual background

On March 2, 2023, Plaintiff Axis Surplus Insurance Company ("Plaintiff" or "Axis") filed a Complaint [1] for Declaratory Judgment against Defendant Diamondhead Commercial Development, LLC ("Diamondhead" or "DCD"), seeking "a determination that [Axis] has no duty to indemnify any losses to Diamondhead claimed pursuant to a Commercial General Liability Policy[,]" ("the Policy" or "the Axis Policy") and that "the policy is null and void due to Diamondhead's material misrepresentations made during the application process for the Policy." Compl. [1] at 1-2; *see also* 2d Am. Compl. [6] at 1-2. Axis subsequently amended its Complaint [1] twice, filing a Second Amended Complaint [6], the current operative pleading, on April 24, 2023. *See* 2d Am. Compl. [6] This action arose from Diamondhead's claim for damages following Hurricane Zeta, which allegedly impacted Diamondhead's property on or about October 28, 2020. *Id.* at 3.

While investigating Diamondhead's Hurricane Zeta claim, Axis allegedly discovered that Diamondhead's property was damaged on or about June 7, 2020, from Tropical Storm Cristobal and that Diamondhead had received payments from Lloyd's of London for this damage.[1] 2d Am. Compl. [6] at 3. The Axis Policy includes an endorsement excluding any damages caused before the policy period, Ex. [6-1] at 67; *see also* 2d. Am. Compl. [6] at 4-5, and Axis asserts the alleged failure to disclose

---

[1] While admitting that it received payments for damage related to Tropical Storm Cristobal and that Axis had information that a claim related to Tropical Storm Cristobal existed, Diamondhead denies that Axis only discovered this information while investigating the claims related to Hurricane Zeta. Answer [10] at 2.

2

the prior claim on the application for the Axis Policy constituted a false and material misrepresentation justifying rescission of the Policy, *id.* at 5-6.

In addition, while Axis was investigating the Hurricane Zeta claim, Jim Grotkowski, the sole principal and manager of Diamondhead, appeared for an examination under oath, during which he averred that Scott M. Favre Public Adjuster, LLC ("Favre") handled both the Hurricane Zeta and Tropical Strom Cristobal claims, and he deferred to Favre on "all issues related to the damages sustained by the Property, the nature and scope of any repairs made to the property, and the extent of any repairs that are reportedly still needed at the Property."[2] *Id.* at 4; *see also* Ex. [4-2] at 19, 24, 27, 28, 30-31, 38-40, 43-47, 50-51, 55. Axis then requested that Favre submit to an examination under oath, which he allegedly refused. 2d Am. Compl. [6] at 4. Axis asserts that this amounted to a breach of Diamondhead's duty to cooperate under the Policy, relieving it of "any duty to indemnify Diamondhead for any alleged losses encompassed by the Zeta Claim." *Id.* at 6-10.

B.  Procedural history

When Diamondhead answered Axis's Second Amended Complaint [6], it included counterclaims against Axis and asserted third-party claims under Federal Rule of Civil Procedure 14 against Amwins. Answer [10] at 8-19. Diamondhead asserts that Axis conducted its business in Mississippi through Amwins and that "at the time of underwriting and binding, and for 45 days thereafter," either Axis or

---

[2] Diamondhead admits Jim Grotkowski deferred to Favre on these issues but denies "any inference of pattern deferrals or non-cooperation." Answer [10] at 3.

3

Amwins knew or should have known of Diamondhead's Tropical Storm Cristobal claim. *Id.* at 11-13. Although the loss history section of Diamondhead's policy application was left blank, the "Check if None" box which answered the question was also left blank, thus placing Axis on notice that it needed to require Diamondhead to provide a "letterhead affirmative statement of no prior history[.]" *Id.* at 11-12. According to Diamondhead, neither Axis nor Amwins did so. *Id.* at 12.

Diamondhead asserts a claim for breach of contract against Axis only (Count I), and three other claims against Axis and Amwins for bad faith breach of contract related to post-claim underwriting, breach of "common law duty," and conspiracy to deny Diamondhead's Hurricane Zeta claim (Counts II-IV). *Id.* at 16-17.

Amwins has filed a Motion [20] to Dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim, asserting that it "has been improperly joined under Rule 14 of the Federal Rules of Civil Procedure." Mem. [21] at 2; *see also* Mot. [20]; Fed. R. Civ. P. 14(a)(1). Amwins argues that the claims asserted against it by Diamondhead should be dismissed because they are not derivative of the main claim in this action, specifically Axis's claim for declaratory judgment, as required by Rule 14. Mem. [21] at 3-4. This is so because if Axis prevails, it does not recover any damages from Diamondhead, and thus there is nothing for which Amwins can be liable to Diamondhead. *Id.*

Diamondhead responds that its claims are derivative because if the Court grants Axis's request for rescission, then Amwins is liable for failing to "inform Axis of any blank loss history section in the insurance application at the time Axis

4

accepted the risk . . . ." Mem. [25] at 13-14. In Diamondhead's view, its bad faith breach of contract claims related to post-claim underwriting and its breach of common law duty claims are dependent on Axis prevailing on its claim for rescission for material misrepresentation. *Id.* It argues that Axis's claim "is predicated on the alleged fundamental fact of Axis' lack of prior knowledge of the blank loss history section." *Id.* at 14. Axis's claims can only be true if Amwins breached its duties under the contract and common law by not informing Axis of any blanks in the loss history section of the application and by not following "the joint underwriting guidelines and follow[ing]-up with [Diamondhead] to confirm whether there was a prior loss or not." *Id.* at 14.

  Amwins counters in its Reply [26] that it was Diamondhead's duty to disclose all information in the application truthfully, and thus this case is not about Amwins's alleged failure to investigate but Diamondhead's breach of its duty to disclose, as Amwins and Axis had a right to rely on the information in the application and had no duty to investigate. Reply [26] at 2. According to Amwins, either Diamondhead is seeking coverage for both Hurricane Zeta and Tropical Storm Cristobal damages or it is not. *Id.* at 3. Amwins reasons that if Diamondhead is seeking coverage for Tropical Storm Cristobal damages as well as Hurricane Zeta damages, the failure to disclose the prior loss results in rescission, but if Diamondhead seeks coverage for only Hurricane Zeta damages, its failure to cooperate relieves Axis of any duty to indemnify. *Id.* In Amwins's view, neither result relates to Amwins's conduct and thus Axis's Complaint [1] cannot form the

5

basis of any derivative claim against Amwins. *Id.* Amwins further asserts that it took no action post-claim and Diamondhead does not allege that it did, such that Diamondhead cannot recover against Amwins for post-claim underwriting. *Id.* at 4. In sum, Amwins argues that Diamondhead's allegations at best support defeating Axis's claim for declaratory judgment on the basis that Axis had constructive knowledge of the prior claim through its agent Amwins, but they do not create a basis for recovery against Amwins itself. *Id.* at 5.

## II. DISCUSSION

A.   Relevant legal standards

1.   Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), a complaint or third-party claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation omitted); *see also Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016). A claim does not need detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the claimant, *Varela v. Gonzales,* 773 F.3d 704, 707 (5th Cir. 2014) (citations omitted), a claimant must plead "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion to dismiss, a court "will not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *United States ex rel. Jamison v. Del-Jen, Inc.*, 747 F. App'x 216, 219 (5th Cir. 2018). A court "may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

2.  Federal Rule of Civil Procedure 14

Rule 14 permits a defending party to bring third-party claims against "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). "Impleader under Rule 14 is only proper if the claims asserted by the third party are derivative of the main claim—if the impleaded party is or may be liable for part of the claim against [the original defendant.]" *Mitchell v. Hood*, 614 F. App'x 137, 140 (5th Cir. 2015) (quotation omitted) (alteration in original). "In other words, it is not enough that the impleaded claims arise from the same facts and events as the original claim; rather, for the impleaded claim to be proper, the potential liability of the third-party defendant must be contingent upon the outcome of the original claim." *Id.* (citing *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 752 (5th Cir. 1967)). Additionally,

7

> Impleader also is proper only when a right to relief exists under the applicable substantive law; if it does not, the impleader claim must be dismissed. If, for example, the governing law does not recognize a right to contribution or indemnity, impleader for these purposes cannot be allowed.

*Martco Ltd. P'ship v. Bruks Inc.*, 430 F. App'x 332, 335 (5th Cir. 2011) (quoting 6 Charles Alan Wright et al., *When a Third-Party Action Is Proper*, Fed. Prac. & Proc. Civ. § 1446, at 415-21 (3d ed. 2010)) (quotations omitted).

B.  Whether Diamondhead's claims against Amwins are derivative of Axis's declaratory judgment claims against Diamondhead

This question turns upon whether Diamondhead's third-party claim against Amwins is derivative of Axis's claim seeking a declaratory judgment against Diamondhead. Another court within this District has addressed this issue directly. *See Burlington Ins. Co. v. BAL Enterprises, LLC*, No. CIVA 2:07-CV-127-KS-MTP, 2008 WL 2477466 (S.D. Miss. June 17, 2008).

In *Burlington*, the plaintiff, Burlington Insurance Company ("Burlington"), filed a complaint against BAL Enterprises doing business as Coyotes ("Coyotes"), Julia Laudenslager, Pamela Cameron, David Cameron, Sr., and Crystal Cameron, seeking declaratory relief that it had "neither a duty to defend nor indemnify any party" in a state-court dram shop lawsuit filed against Coyotes, its insured. *Id.* at *1. Burlington argued the facts alleged in the state-court lawsuit did not constitute an "'occurrence' falling within one of its policy's 'coverage territories.'" *Id.* In its answer, Coyotes included a third-party complaint against an insurance agent, Anderson-Walker & Coker, LLC doing business as Nowell Insurance ("Nowell"), alleging that Nowell had "misrepresented the scope of the insurance policy by

8

promising to provide insurance to cover dram shop actions and failing to provide the promised insurance[,]" *Id.* In the event that Burlington obtained declaratory relief, Coyotes sought damages from Nowell "in an amount equal to their loss in the underlying lawsuit." *Id.* Nowell filed a motion to dismiss, which the court granted, stating that Nowell

> correctly argues . . . that '[t]he Third–Party Complaint asserted against [Nowell] is improper and invalid as [Coyotes] is not seeking indemnification for any causes of action asserted against it by . . . Burlington . . . and has actually asserted a separate cause of action against [Nowell].'

*Id.* (alterations in original).

The court found that "[t]he proof required to show that Burlington is or is not entitled to the relief it has requested is totally foreign to the proof of liability required to find Nowell liable for any breach to Coyotes." *Id.* at *3. It also held that Coyotes's claims were premature, because "Burlington must receive the relief it has requested in order for any potential liability of Nowell to even arise under the claims asserted by Coyotes against Nowell." *Id.* "Instead, Nowell may potentially be liable in the place of Burlington for the claims asserted by the plaintiffs in the state court action based on the allegations of the third-party complaint[,]" but "Rule 14 cannot be used to bring such claims in an unrelated action." *Id.* Another court within the Fifth Circuit dealing with similar facts has recently reached a similar conclusion. *See Kinsale Ins. Co. v. CD Mgmt. of New Orleans, Inc.*, No. CV 23-736, 2023 WL 3949121, at *7-9 (E.D. La. June 12, 2023), *appeal docketed*, No. 23-30436

9

(5th Cir. June 20, 2023)[3] (striking a third-party claim where the defendant attempted to implead a third party it alleged would be liable if the plaintiff was granted declaratory judgment that the defendant's insurance claim was not covered under the relevant insurance policy).

The allegations raised by Axis in the Second Amended Complaint [6] lead to the same result. Diamondhead's third-party claims against Amwins are not derivative of those in Axis's declaratory judgment claim because, regardless of the outcome, Diamondhead will not be liable to Axis for any damages. *See* 2d Am. Compl. [6] at 6, 10. If Axis prevails, it obtains only a judgment that the insurance contract does not exist or that it has no duty to indemnify Diamondhead. *See id.* at 6, 10; *Burlington*, 2008 WL 2477466, at *3. In this scenario, Amwins cannot be liable to Diamondhead for damages Diamondhead will not owe to Axis. This is not sufficient to allow Rule 14 joinder. *See Mitchell*, 614 F. App'x at 140 ("[i]mpleader under Rule 14 is only proper. . . if the impleaded party is or may be liable for part of the claim against [the original defendant.]") (alterations in original).

Conversely, if Diamondhead prevails and the Court finds that there is a valid insurance contract, such that Axis would be required to compensate Diamondhead for its losses, then Diamondhead will have suffered no damages. Thus, under either scenario there can be no third-party liability on the part of Amwins that is derivative of the original declaratory judgment claim. *See, e.g., Burlington*, 2008 WL

---

[3] *Kinsale* is on appeal for reasons unrelated to the issues relevant here. *See* Brief for Petitioner-Appellant at 10-11, *Kinsale Insurance v. Sea Brook Marine*, No. 23-30436 (5th Cir. Sept. 26, 2023).

2477466, at *3; *Kinsale*, 2023 WL 3949121, at *7-9. Dismissal of Diamondhead's third-party claims against Amwins is warranted.

C.     Whether Diamondhead states a claim against Amwins

Substantive issues also require dismissal. When sitting in diversity, the Court is to apply the forum state's law to substantive issues. *Gasperini v. Ctr. For Humans., Inc.*, 518 U.S. 415, 416 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Count I of Diamondhead's pleading is directed only at Axis and need not be addressed. Count II alleges bad faith breach of contract and post-claim underwriting, but Diamondhead fails to allege any facts against Amwins that, taken in a light most favorable to Diamondhead, would support this claim against Amwins. A claim for post-claim underwriting focuses on conduct that occurs after the claim has been submitted. *See, e.g.*, *Lewis v. Equity Nat. Life Ins. Co.*, 637 So. 2d 183, 188-89 (Miss. 1994). "Post-claim underwriting occurs when an insured pays premiums and operates under the assumption he is insured against a specified risk, only to learn after he submits a claim that he is not insured." *Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 204 (Miss. 2002). When laying out the facts underlying its third-party claims, Diamondhead does not allege any post-claim involvement or conduct on the part of Amwins. Specifically, Diamondhead alleges that:

> 26. AXIS did not conduct a reasonable investigation of DCD's Zeta Claim.
>
> 27. AXIS did not exercise good faith and fair dealing in adjusting DCD's Zeta Claim in the amount of $4,182.33 and claiming the total loss was less than the deductible, effectively denying DCD's Zeta Claim.

11

> 28. AXIS breached the loss payment provisions in the AXIS Policy by failing to pay DCD's Zeta Claim.
>
> 29. AXIS lacked an arguable or legitimate basis for denying DCD's Zeta Claim.
>
> 30. Two and one-half (2 ½) years after the Axis Policy was issued, AXIS denied DCD's Zeta Claim by letter on March 1, 2023, based on DCD's application for insurance and prior Cristobal loss.

Answer [10] at 14. Thus, even accepting Diamondhead's allegations as true, Count II fails to allege any conduct by Amwins related to post-claim underwriting, as Diamondhead only asserts pre-claim conduct by Amwins. Only after the foregoing factual statements does Diamondhead raise any allegation related to Amwins post-claim conclusorily, stating in paragraph 31 that "[t]he actions of AXIS/AMWINS constitute the unfair and prohibited practice of post-claim underwriting." *Id.* This conclusory statement, without any factual allegations of specific post-claim conduct on the part of Amwins, is insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. 662 at 680-81; *City of Austin v. Kinder Morgan Texas Pipeline, LLC*, 528 F. Supp. 3d 670, 678-79 (W.D. Tex. 2021).

To the extent Count II contains any factual allegations relating to Amwins, they also misconstrue the principal-agent relationship. S*ee* Answer [10] at 16-17. It is Axis who is party to the Policy, not Amwins; Amwins merely acted as Axis's agent in underwriting the contract. *See* Answer [10] at 11; Axis's Answer [15] at 3. Diamondhead asserts that "AXIS and/or AMWINS did know or should have known of the Cristobal Claim prior to insuring [Diamondhead's] property . . . ." Answer [10] at 16. Diamondhead further contends that:

> AXIS/AMWINS deliberately relied on an application it knew was incomplete and remained silent for two and one-half (2 ½) years, lying in wait, and in the event a loss did occur, AXIS knew it would later deny a claim based on an incomplete application and prior loss. This effectively set up the perfect "risk" business because it involved no risk whatsoever.

*Id.* at 17.

Taking these allegations as true, they fail to state a claim upon which relief can be granted as against Amwins. Amwins acted as Axis's agent, *see* Answer [10] at 11; Answer [15] at 3, and for purposes of this action, Amwins is not considered a separate entity but instead "one who stands in the shoes of" Axis as its agent or "alter ego[,]" *First Jackson Sec. Corp. v. B. F. Goodrich Co.*, 176 So. 2d 272, 278 (1965) (discussing the differences in an agent and employee); *see also Weeks v. Huntington Ingalls Inc.*, No. 1:11-cv-157-HSO-JMR, 2012 WL 5383371, at *5 (S.D. Miss. Oct. 31, 2012) (quoting *Bailey v. Worton*, 752 So. 2d 470, 474 (Miss. Ct. App. 1999) (quoting *First Jackson Sec. Corp.*, 176 So. 2d at 278)); *Bissette v. Univ. of Mississippi Med. Ctr.*, 282 So. 3d 507, 515-16 (Miss. Ct. App. 2019) (quoting *First Jackson Sec. Corp.*, 176 So. 2d at 278).

In Mississippi,

> It is a longstanding [tenet] of agency law that an agent who discloses its principal cannot be held liable for the contract entered into with the principal. Although an agent enters into a contract on behalf of the principal, the agent does not become a party to the contract and is not responsible for its breach.

*Culpepper Enterprises Inc. v. Parker*, 270 So. 3d 116, 132 (Miss. Ct. App. 2018) (alteration in original) (quoting *Chevis v. Miss. Farm Bureau Mut. Ins. Co.*, 76 So. 3d 187, 195 (Miss. Ct. App. 2011)) (citing *Fireman's Fund Ins. Co. v. Chartis Ins.*

13

*Agency Inc.*, No. 3:12-CV-657, 2013 WL 1305602, at *2 (S.D. Miss. 2013); *Johnson v. Rimes*, 890 F. Supp. 2d 743, 745 (S.D. Miss. 2012); *Hughes v. United Auto. Ins. Co.*, No. 5:09-CV-168, 2010 WL 2670858, at *3 (S.D. Miss. 2010)).

Although the factual allegations in Count II purport to recite conduct by both Axis and Amwins, Axis is the only relevant party, as "absent fraud or other equivalent conduct[,]" *Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989), Amwins as agent of a disclosed principal "incur[s] no individual liability," *id.* Diamondhead makes no allegations that Amwins acted beyond the scope of its agency with Axis or that Axis was an unknown or undisclosed principal. *See generally* Answer [10]; Resp. [24]; Mem. [25]; *see also Edgewater Landing, Inc.*, 541 So. 2d at 1047. Thus, even if Count II of Diamondhead's Counterclaim [10] as it relates to Amwins were derivative of the claims in the Second Amended Complaint [6], which it is not, it fails to state a claim as against Amwins.

Turning to Count III, which purports to state a claim for what can only be construed as negligent underwriting,[4] *see* Answer [10] at 17-18, under Mississippi law, an insurance agent contracted by the insured to procure insurance for the insured owes a duty of care "to his principal to procure insurance policies with reasonable diligence and good faith," *Taylor Mach. Works, Inc. v. Great Am. Surplus Lines Ins. Co.*, 635 So. 2d 1357, 1362 (Miss. 1994). But that is not the situation here;

---

[4] The Third-Party Complaint [10] titles Count III as a claim for "Breach of Common Law Duty[.]" Answer [10] at 17. However, the allegations in Count III appear to be an attempt to assert the elements of negligence in the underwriting process. *See, e.g., id.* at 17-18 ("AXIS/AMWINS failed to exercise reasonable care in the underwriting process and for the 60-day period after binding, when it failed to provide [Diamondhead] with notice that [Diamondhead] was either ineligible for insurance of that AXIS/AMWINS would cancel the AXIS policy.").

14

Amwins was Axis's agent, not Diamondhead's. The Court is unable to locate any Mississippi precedent allowing a claim of negligent underwriting by an insured against the agent of an insurance company, and Diamondhead has not pointed the Court to any authority recognizing such a claim. *See generally* Answer [10]; Resp. [24]; Mem. [25]. Moreover, another court within this District has held that "Mississippi law has never recognized [negligent underwriting] as a viable claim." *Terrell v. Daddio*, No. 5:15-CV-50-DCB-MTP, 2017 WL 1053085, at *4 (S.D. Miss. Mar. 20, 2017). For these reasons, Count III fails to state a claim against Amwins upon which relief can be granted.

Turning to the civil conspiracy claim in Count IV, "[u]nder Mississippi law, the elements of a civil conspiracy are: '(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result.'" *Rex Distrib. Co., Inc. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 455 (Miss. 2019) (quoting *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013)). Regarding the first element, "[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Orr v. Morgan*, 230 So. 3d 368, 376 (Miss. Ct. App. 2017) (finding that because the alleged co-conspirators had an agent-principal relationship, there was no genuine issue of material fact as to the lack of agreement between the alleged co-conspirators) (quoting *Nelson Radio & Supply Co. v. Motorola Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)); *see also* 16 Am. Jur.

15

2d *Conspiracy* § 58 ("Ordinarily, because a corporation and its agents are a single person in the eyes of the law, a corporate entity cannot conspire with itself."). Here, because Amwins acted as Axis's agent, *see* Answer [10] at 11; Answer [15] at 3, as a matter of law it could not have conspired with Axis and Count IV does not state a claim against Amwins.

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result. Amwins's Motion [20] to Dismiss Third-Party Claim should be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion to Dismiss [20] filed by Third-Party Defendant AmWINS Access Insurance Services, LLC  is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Third-Party claims raised by Third-Party Plaintiff Diamondhead Commercial Development, LLC against Third-Party Defendant AmWINS Access Insurance Services, LLC are **DISMISSED WITH PREJUDICE**, pursuant to Federal Rule of Civil Procedure 14.

**SO ORDERED AND ADJUDGED**, this the 11th day of December, 2023.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE